I respectfully dissent from the majority's holding that the summary judgment was proper on the wantonness claim against Pepsi Bottling, and I concur in the result as to the remainder of the opinion.
The majority in this case holds that Oden cannot recover against Pepsi or Vendo because Mark's death was "a direct result of [his] knowing and intentional participation in a crime involving moral turpitude." 621 So.2d at 955. The majority also states that the absolute bar based upon the plaintiff's own criminal activity "promotes the desirable public policy objective of preventing those who knowingly and intentionally engage in an illegal or immoral act involving moral turpitude from imposing liability on others for the consequences of their own behavior" and that "such a rule derives principally not from consideration for the defendant, 'but from a desire to see that those who transgress the moral or criminal code shall not receive aid from the judicial branch of government.' " 621 So.2d at 955. *Page 960 
Under the specific facts of this case, I fail to see how allowing Oden to maintain an action for Pepsi's alleged wanton conduct would constitute "aid" to Mark. More importantly, the majority opinion fails to recognize that "punishment of wrongdoers is the dominant social perception of the tort system." Martin A. Kotler, Utility, Autonomy and Motive: ADescriptive Model of the Development of Tort Doctrine, 58 Cinn.L.Rev. 1231, 1233 (1990). In recognition of this purpose, I believe that an exception, discussed in greater detail below, to this doctrine should be made in cases where a person has suffered serious physical injury or has been killed because of another's willful or wanton conduct. I believe that the competing public policy purposes that created the doctrine would be better served by applying other established legal principles on a case-by-case basis as to that class of cases where a person has suffered serious physical injury or has been killed.
The bar against maintaining an action in which the plaintiff was required to prove his own criminal conduct, or the criminal conduct of the one through whom he claims, in order to establish his cause of action arose from two basic legal tenets: (1) a person should not be allowed to profit from his own wrongful conduct; and (2) criminal activity is unforeseeable, and the law should not require a reasonable person, such as the defendant, to prepare for the possibility.
The facts of this case (a 14-year-old boy is crushed to death while trying to steal a few canned drinks) make it obvious that the one who violated the law is not going to "profit" from this action and that the judicial branch of government is certainly not "aiding" him in his criminal conduct. Therefore, the first tenet is not implicated by the facts of this case.
As to the second tenet, criminal activity was considered generally unforeseeable by a "reasonable man"; therefore, the "reasonable man" ordinarily could not prepare to avoid the consequences of another man's criminal acts. However, in other areas of the tort law, when the facts of the case indicate that criminal activity is foreseeable and, indeed, is expected, the "reasonable man" may be required to prepare to avoid the consequences of these criminal acts. For example, this Court has held that a plaintiff injured by a third party's criminal acts may recover from the defendant if the criminal act was foreseeable. See Vines v. Plantation Motor Lodge,336 So.2d 1338 (Ala. 1976).
Also, in the area of premises liability, this second tenet, and the doctrine itself, have been implicitly, though not expressly, abrogated. See Ryals v. United States Steel Corp.,562 So.2d 192 (Ala. 1990); Motes v. Matthews, 497 So.2d 1121
(Ala. 1986). The general rule is that an occupier of land owes a duty to trespassers not to recklessly, willfully, or wantonly injure them. Ryals, 562 So.2d at 194; Thompson v. ChampionInternational Corp., 500 So.2d 1048 (Ala. 1986). The very idea that an occupier of land could owe a duty to someone unlawfully upon his land seems to crack the absolute bar the doctrine supports. Looking at the scope of the duty a landowner owes to a trespasser, one sees that the levels of culpable conduct — wantonness and wilfulness — subsume two distinct characteristics of the occupier's conduct: (1) that he possessed a level of certitude or actual knowledge about the trespasser's presence, albeit an unlawful presence, and the trespasser's potential or actual peril (more than simple foreseeability); and (2) that he consciously disregarded the trespasser's peril and/or actually intended to harm the trespasser (deliberate conduct intended or expected to result in injury). For example, this Court has held that the occupier's liability to a trespasser for injuries incurred as a result of a trap or a pitfall is rested upon the theory that the occupier was expecting the trespasser and formulated some method by which to harm him. Moseley v. Alabama Power Co.,246 Ala. 416, 419, 21 So.2d 305 (1945) ("[T]hat the owner has expected the trespasser and prepared an injury is no more justified than if he had held a gun and fired it."). The duty a landowner owes a trespasser *Page 961 
also makes special exceptions for children[5] and allows recovery by an adult trespasser who has been injured while committing a crime on the property.[6]
In this case, Oden presented substantial evidence that Pepsi knew that the vending machines were being tipped for the purpose of stealing drinks; that Pepsi also knew that such criminal activity had resulted in serious injuries and death; that Vendo offered to send Pepsi, free of charge, labels warning of the danger of tipping the vending machines; that Vendo also offered to send Pepsi, at cost, anchors to secure the vending machines and prevent their tipping; and that Pepsi refused to take any action to forestall the known dangers created by the vending machines. If a jury finds these things to be the facts, then Pepsi should not go unpunished for its wanton disregard of the danger posed by its vending machines.
For this reason, I would create an exception to the absolute bar in cases where (1) the plaintiff can show that the defendant expected or knew that the plaintiff would engage in such criminal activity even at the risk of serious physical injury or death — i.e., where criminal conduct was more than merely foreseeable — and (2) the plaintiff can show that the defendant acted wilfully or wantonly in injuring the plaintiff — i.e., where the defendant deliberately acted, or deliberately failed to act, with knowledge that such action or inaction was likely to result, or would result, in death or serious injury to the plaintiff. In cases that would fall within my proposed exception, the ultimate liability of the defendant would be determined based upon an application of established principles of law to the facts of each case. Such a system would protect the public policies behind the absolute bar without allowing one who acts wantonly or wilfully to injure another to "profit" from such action merely because his action or failure to act injured someone who was tipping his machine to steal drinks, instead of one who was attempting to retrieve lost coins or a drink can that was stuck in the machine.
For the above-stated reasons, I respectfully dissent from the affirmance of the summary judgment in favor of Pepsi on the wantonness claim; I concur in the result as to the affirmance of the judgment as to the remaining claims against Pepsi and as to all claims against Vendo.
[5] A possessor of land owes a duty to exercise reasonable care to eliminate an artificial condition on land that poses a danger to children. Fletcher v. Hale, 548 So.2d 135 (Ala. 1989); Lylev. Bouler, 547 So.2d 506 (Ala. 1989).
[6] Ryals v. United States Steel Corp., 562 So.2d at 194, states that "the duty owed by a landowner to an adult trespasser who comes upon the land and is injured while committing a crime is the duty not to intentionally injure such a trespasser." The Court added a caveat that this statement of duty did not affect the "no duty" rule — the rule that a landowner owes no duty to a trespasser attempting to enter an occupied dwelling with the purpose of committing a crime therein or inflicting bodily injury on an occupant of the dwelling. Id. at n. 3.